UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **15-20545** CR-LENARD/GOODMAN

18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 2
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(1)



FILED by ___ D.C.
JUL 16 2015
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES OF AMERICA,

vs.

GUILLERMO A. SANCHEZ-BADIA,
ISABEL C. SANCHEZ,
    and
GUSTAVO J. GIRAL,

               Defendants.
_____/

## INDICTMENT

The Grand Jury charges that:

### General Allegations

At all times relevant to this Indictment:

1. Factoring was a type of accounts receivable financing in which a merchant sold the right to collect on its accounts receivable to a private lender, for a discounted price, in return for immediate cash. Private lenders who specialized in this type of financing were called factors. Factoring provided immediate money allowing the borrowing business to pay bills or to purchase additional merchandise.

2. The Export-Import Bank of the United States ("Ex-Im Bank"), an independent agency of the executive branch of the United States, was located in Washington, D.C., and was the official export credit agency of the United States.

3. The mission of Ex-Im Bank was to assist in the sale of United States goods and services to companies overseas. One of the ways Ex-Im Bank fulfilled its mission was to guarantee loans made by United States banks and financing companies, the "Lenders," to creditworthy foreign companies and individuals for the purpose of purchasing United States goods for foreign export.

4. After Ex-Im Bank had guaranteed the loan made by a Lender, if a borrower defaulted, Ex-Im Bank, as the guarantor, would pay off the remaining loan balance including interest to the Lender.

5. Before guaranteeing a loan, Ex-Im Bank required that a United States exporter – the person or entity shipping the United States goods on behalf of the borrower – certify to Ex-Im Bank the receipt of a down payment, and the type, amount, and value of the United States goods that were purchased and shipped.

## The Defendants

6. **GUILLERMO A. SANCHEZ-BADIA**, a United States citizen, resided in Miami, FL, and owned both ACE Products, Inc. ("ACE"), an export company located in Cutler Bay, FL, and Timber Depot ("Timber Depot"), a lumber export company located in Miami, FL, and Dorado, Puerto Rico. **GUILLERMO A. SANCHEZ-BADIA** was the father of **ISABEL C. SANCHEZ**.

7. **ISABEL C. SANCHEZ**, a United States citizen, resided in Miami, FL, and owned Ex-Im of America, Inc. ("EOA"), an export company located in Miami, FL. EOA was a private company and not related in any way to Ex-Im Bank. **ISABEL C. SANCHEZ** was married to defendant **GUSTAVO J. GIRAL** and was the daughter of **GUILLERMO A. SANCHEZ-BADIA**.

8. **GUSTAVO J. GIRAL**, a United States citizen, resided in Miami, FL, and owned both Global Export Machinery, Inc. ("GEM"), an export company located in Miami, FL, and Zaragoza Exports ("Zaragoza") d/b/a LBM of America ("LBM"), an export company located in Miami, FL. **GUSTAVO J. GIRAL** was married to defendant **ISABEL C. SANCHEZ**.

### Co-Conspirators

9. Fredy Moreno-Beltran ("Moreno"), a Colombian national charged separately, resided in Colombia, South America, and owned Clientric S.A. ("CSA"), a telephone call center business located in Colombia. Moreno and CSA acted as a "buyer" in both the factoring fraud and the Ex-Im Bank fraud.

10. Jorge Amad ("Amad"), a United States citizen charged separately, resided in Miami, FL, and was the co-owner of a telecommunications software company known as Approach Technologies International ("ATI").

11. Ricardo Beato ("Beato"), a United States citizen charged separately, resided in Miami, FL, and was the co-owner of ATI.

## Relevant Entities

12. ExpoCredit ("EC") was a factoring company in Miami, FL, that purchased receivables from **GUILLERMO A. SANCHEZ-BADIA** and **ISABEL C. SANCHEZ** based on purported sales generated by companies they controlled.

13. The Factor Group ("TFG") was a factoring company in Miami, FL, that purchased receivables from **GUILLERMO A. SANCHEZ-BADIA** and **ISABEL C. SANCHEZ** based on purported sales generated by companies they controlled. Together TFG and EC are referred to herein as the "Factors."

14. Check Cashing Store 1 was a check cashing store in Miami, FL, and was utilized by **GUILLERMO A. SANCHEZ-BADIA**, **ISABEL C. SANCHEZ**, and **GUSTAVO J. GIRAL** to cash checks issued by companies they controlled.

15. Check Cashing Store 2 was a check cashing store in Homestead, FL, and was utilized by **GUILLERMO A. SANCHEZ-BADIA**, **ISABEL C. SANCHEZ**, and **GUSTAVO J. GIRAL** to cash checks issued by companies they controlled.

16. National Resources of America ("NROA") was a non-functioning lumber company operated by **GUILLERMO A. SANCHEZ-BADIA**, **ISABEL C. SANCHEZ**, and **GUSTAVO J. GIRAL** that acted as a purported customer of Timber Depot and EOA.

17. Good Furniture ("GF") was a non-functioning company operated by **GUILLERMO A. SANCHEZ-BADIA**, **ISABEL C. SANCHEZ**, and **GUSTAVO J. GIRAL** that acted as a purported customer of Timber Depot and EOA.

18. Total Warehouse and Furniture ("TWF") was a non-functioning company allegedly located in Puerto Rico that was operated by **GUILLERMO A. SANCHEZ-BADIA**,

4

**ISABEL C. SANCHEZ**, and **GUSTAVO J. GIRAL** and acted as a purported customer of Timber Depot and EOA.

19. American Steel and Lumber ("ASL") was a non-functioning company allegedly located in Miami, FL, and San Juan, Puerto Rico, which was operated by **GUILLERMO A. SANCHEZ-BADIA, ISABEL C. SANCHEZ**, and **GUSTAVO J. GIRAL** and acted as a purported customer of Timber Depot and EOA.

20. Salamander Trucking ("ST") was an alleged company located in Miami, FL, that was operated by **GUILLERMO A. SANCHEZ-BADIA, ISABEL C. SANCHEZ**, and **GUSTAVO J. GIRAL** and acted as a purported customer of Timber Depot and EOA.

21. Nuevo Estilo ("NE") was an alleged company located in Puerto Rico that was operated by **GUILLERMO A. SANCHEZ-BADIA, ISABEL C. SANCHEZ**, and **GUSTAVO J. GIRAL** and acted as a purported customer of Timber Depot and EOA.

<u>**COUNT 1**</u>
**Conspiracy to Commit Wire Fraud**
**(18 U.S.C. § 1349)**

1. Paragraphs 1 through 21 of the General Allegations section of this Indictment are realleged and incorporated by reference as if set out in full.

2. From in or around February 2007, through in or around December 2012, in Miami-Dade County, in the Southern District of Florida, and elsewhere, defendants,

**GUILLERMO A. SANCHEZ-BADIA,**
**ISABEL C. SANCHEZ,**
**and**
**GUSTAVO J. GIRAL,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate and agree amongst themselves and with others, known and

unknown to the Grand Jury, to knowingly and with intent to defraud devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations and promises were false and fraudulent when made, and did transmit and cause to be transmitted, by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## Purpose of the Conspiracy

3. The purpose of the conspiracy was for **GUILLERMO A. SANCHEZ-BADIA, ISABEL C. SANCHEZ, GUSTAVO J. GIRAL**, and others to unlawfully enrich themselves by defrauding the Factors, the Lenders and Ex-Im Bank by submitting false and fraudulent sales and shipping information to the Factors, the Lenders and Ex-Im Bank, and misappropriating loan proceeds for their personal benefit and to further the fraud.

## Manner and Means of the Conspiracy

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things:

4. **GUILLERMO A. SANCHEZ-BADIA, ISABEL C. SANCHEZ,** and **GUSTAVO J. GIRAL** caused companies they owned and controlled to enter into factoring loan agreements with the Factors, pursuant to which the Factors purchased purported receivables from companies owned and controlled by defendants.

5. To make it appear that the companies they owned and controlled had receivables to purchase, **GUILLERMO A. SANCHEZ-BADIA, ISABEL C. SANCHEZ, GUSTAVO J. GIRAL**, and others created and caused to be created false and fraudulent documents, including

6

false purchase orders, invoices and shipping documents purporting to show that merchandise had been purchased by, and shipped to, foreign and domestic purchasers possessing satisfactory commercial credit, when in fact no such purchases or shipments occurred.

6. **GUILLERMO A. SANCHEZ-BADIA, ISABEL C. SANCHEZ, GUSTAVO J. GIRAL**, and others provided the false and fraudulent purchase orders, invoices and shipping documents to the Factors to induce the Factors to purchase purported receivables from companies the defendants owned and controlled.

7. **GUILLERMO A. SANCHEZ-BADIA, ISABEL C. SANCHEZ, GUSTAVO J. GIRAL**, and others caused the transfer of fraud proceeds, via bank wire transfer, to accounts in the names of companies they owned and controlled, including EOA, NE, ST, ASL, GEM, ATI, Zaragoza, Timber Depot, ACE, NROA, and GF.

8. After fraudulently obtaining money from the Factors, **GUILLERMO A. SANCHEZ-BADIA, ISABEL C. SANCHEZ, GUSTAVO J. GIRAL**, and others created and caused to be created additional false and fraudulent invoices, which purported to show new sales and purchases, which never occurred, thereby inducing the Factors to purchase additional receivables based on those false and fraudulent invoices, and using a portion of the fraudulent proceeds to pay off prior factored invoices in a Ponzi-like scheme.

9. To continue the conspiracy at a time when the Factors refused to extend additional financing due to payment delinquencies, **GUILLERMO A. SANCHEZ-BADIA, ISABEL C. SANCHEZ, GUSTAVO J. GIRAL**, Fredy Moreno-Beltran, Jorge Amad, and Ricardo Jose Beato obtained a fraudulent Ex-Im Bank guaranteed loan to further fund the scheme.

10. To obtain the loan from the Ex-Im Bank, **GUILLERMO A. SANCHEZ-BADIA, ISABEL C. SANCHEZ, GUSTAVO J. GIRAL**, Fredy Moreno-Beltran, Jorge Amad, and Ricardo Jose Beato submitted false and fraudulent documents to Ex-Im Bank through a Lender, falsely representing that United States goods had been purchased by, shipped to, and received by a buyer in South America when the goods had not been purchased, shipped or received.

11. **GUILLERMO A. SANCHEZ, ISABEL C. SANCHEZ, GUSTAVO J. GIRAL**, and others also submitted false and fraudulent loan application documents to Ex-Im Bank through a Lender.

12. **GUILLERMO A. SANCHEZ-BADIA, ISABEL C. SANCHEZ, GUSTAVO J. GIRAL**, and others, used a portion of the Ex-Im Bank guaranteed loan proceeds to pay off, including via bank wire transfer, earlier factored invoices.

13. **GUILLERMO A. SANCHEZ-BADIA, ISABEL C. SANCHEZ, GUSTAVO J. GIRAL**, and others caused the Factors to incur a combined loss of approximately $9,551,425.

14. **GUILLERMO A. SANCHEZ-BADIA, ISABEL C. SANCHEZ, GUSTAVO J. GIRAL**, Fredy Moreno-Beltran, Jorge Amad, and Ricardo Jose Beato caused the Ex-Im bank guaranteed loan to default, causing the United States to incur approximately a $1,951,643.01 loss in indemnifying a Lender.

15. **GUILLERMO A. SANCHEZ-BADIA, ISABEL C. SANCHEZ, GUSTAVO J. GIRAL**, Fredy Moreno-Beltran, Jorge Amad, and Ricardo Jose Beato kept a portion of the fraudulently obtained proceeds for their personal benefit.

All in violation of Title 18, United States Code, Section 1349.

8

## COUNTS 2 - 8
## Wire Fraud
## (18 U.S.C. § 1343)

1. Paragraphs 1 through 21 of the General Allegations section of Count 1 of the Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

2. From in or around February 2007, through in or around December 2012, as specified in each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**GUILLERMO A. SANCHEZ-BADIA,
ISABEL C. SANCHEZ,
and
GUSTAVO J. GIRAL,**

did knowingly and with the intent to defraud devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations and promises were false and fraudulent when made, and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme and artifice.

### Purpose of the Scheme and Artifice

3. The purpose of the scheme and artifice was for **GUILLERMO A. SANCHEZ-BADIA, ISABEL C. SANCHEZ, GUSTAVO J. GIRAL**, and others to unlawfully enrich themselves by defrauding the Factors, the Lenders and Ex-Im Bank by submitting false and fraudulent sales and shipping information to the Factors, the Lenders and Ex-Im Bank, and misappropriating loan proceeds for their personal benefit and to further the fraud.

## Scheme and Artifice

4. Paragraphs 3 through 15 of the Manner and Means section of Count 1 of the Indictment are realleged and incorporated by reference as though fully set forth below as a description of the Scheme and Artifice.

## Use of the Wires

5. On or about the dates set forth below, in Miami-Dade Country, in the Southern District of Florida, and elsewhere, for the purpose of executing the above-described scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, the defendants did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communications, certain writings, signs, signals, and sounds, as set forth in each count below:

## Factoring Fraud Wire Transfers

| Count | Source of Wire | Location Wire Received | Approximate Date of Wire | Approximate Amount of Wire |
|---|---|---|---|---|
| 2 | ACE's Bank Account, Miami, FL Account No. 6344 | NE's Bank Account, Puerto Rico Account No. 4754 | 07/23/2010 | $300,000 |
| 3 | Lender's Bank Account, Charlotte, NC Account No. 4662 | EC's Bank Account, Miami, FL Account No. 4367 | 11/05/2010 | $302,944.82 |
| 4 | ACE's Bank Account, Miami, FL Account No. 6344 | NE's Bank Account, Puerto Rico Account No. 9203 | 11/10/2010 | $73,000 |

## Ex-Im Bank Fraud Wire Transfers

| Count | Source of Wire | Location Wire Received | Approximate Date of Wire | Approximate Amount of Wire |
|---|---|---|---|---|
| 5 | Lender's Bank Account, Charlotte, NC Account No. 4662 | GEM's Bank Account, Miami, FL Account No. 2125 | 11/05/2010 | $466,251.76 |
| 6 | Lender's Bank Account, Charlotte, NC Account No. 4662 | ATI's Bank Account, Miami, FL Account No. 1333 | 11/05/2010 | $1,076,237.92 |
| 7 | ATI's Bank Account, Miami, FL Account No. 1333 | CSA's Bank Account, Bogota, Colombia, South America Account No. 6445 | 11/09/2010 | $63,000 |
| 8 | ATI's Bank Account, Miami, FL Account No. 5752 | CSA's Bank Account, Bogota, Colombia, South America Account No. 6445 | 11/12/2010 | $100,000 |

In violation of Title 18, United States Code, Sections 1343 and 2.

### COUNT 9
### Conspiracy to Commit Money Laundering
### (18.S.C. § 1956(h))

1. Paragraphs 1 through 21 of the General Allegations section of the Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

2. From in or around early 2007, through in or around December 2012, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**GUILLERMO A. SANCHEZ-BADIA,
ISABEL C. SANCHEZ,
and
GUSTAVO J. GIRAL,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, and confederate and agree with each other, and others known and unknown

11

to the Grand Jury, to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce, which financial transactions involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

It is further alleged that the specified unlawful activity is wire fraud, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1956(h).

### COUNTS 10 - 24
**Money Laundering**
**(18 U.S.C. § 1956(a)(1)(B)(i))**

1. Paragraphs 1 through 21 of the General Allegations section of the Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

2. On or about the dates set forth below as to each count, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**GUILLERMO A. SANCHEZ-BADIA,**
**ISABEL C. SANCHEZ,**
**and**
**GUSTAVO J. GIRAL,**

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which financial transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in

whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, as described below:

| Count | Defendant(s) | Type of Transaction | Approximate Date | Approximate Amount |
|---|---|---|---|---|
| 10 | GUSTAVO J. GIRAL | Cash deposit into Zaragoza's bank account (Account No. 6081) in Miami, FL | 08/16/2010 | $104,000 |
| 11 | GUILLERMO A. SANCHEZ-BADIA | Cash payment to EC for factored invoices indicating supposed sales to TWF | 08/17/2010 | $134,928 |
| 12 | GUILLERMO A. SANCHEZ-BADIA | Cash payment to TFG for factored invoices indicating supposed sales to GF | 08/17/2010 | $229,332 |
| 13 | GUILLERMO A. SANCHEZ-BADIA | Wire transfer from ACE's bank account (Account No. 6344) in Miami, FL, to ST's bank account in Miami, FL (Account No. 9847) | 09/14/2010 | $263,048.56 |
| 14 | GUILLERMO A. SANCHEZ-BADIA | GF and Zaragoza checks cashed at Check Cashing Store 1 | 10/22/2010 | $25,838 |
| 15 | ISABEL C. SANCHEZ and GUILLERMO A. SANCHEZ-BADIA | Cash deposit into EOA's bank account (Account No. 4446) in Miami, FL | 10/27/2010 | $50,000 |
| 16 | GUILLERMO A. SANCHEZ-BADIA, ISABEL C. SANCHEZ, and GUSTAVO J. GIRAL | Deposit of check from GEM into NROA's bank account (Account No. 1800) in Miami, FL | 11/05/2010 | $200,000 |
| 17 | GUILLERMO A. SANCHEZ-BADIA, ISABEL C. SANCHEZ, and GUSTAVO J. GIRAL | Deposit of check from GEM into NROA's bank account (Account No. 4148) in Miami, FL | 11/05/2010 | $232,000 |
| 18 | GUILLERMO A. SANCHEZ-BADIA, ISABEL C. SANCHEZ, and GUSTAVO J. GIRAL | Deposit of check from ATI into EOA's bank account (Account No. 4446) in Miami, FL | 11/09/2010 | $512,867 |

13

| Count | Defendant(s) | Type of Transaction | Approximate Date | Approximate Amount |
|---|---|---|---|---|
| 19 | GUILLERMO A. SANCHEZ-BADIA, ISABEL C. SANCHEZ, and GUSTAVO J. GIRAL | Deposit of check from ATI into EOA's bank account (Account No. 4446) in Miami, FL | 11/09/2010 | $198,516 |
| 20 | GUILLERMO A. SANCHEZ-BADIA, ISABEL C. SANCHEZ, and GUSTAVO J. GIRAL | Wire transfer from EOA's bank account (Account No. 4446) in Miami, FL, to ACE's bank account (Account No. 6344) in Miami, FL | 11/09/2010 | $600,000 |
| 21 | GUILLERMO A. SANCHEZ-BADIA, ISABEL C. SANCHEZ, and GUSTAVO J. GIRAL | Wire transfer from ACE's bank account (Account No. 6344) in Miami, FL, to ST's bank account (Account No. 9847) in Miami, FL | 11/10/2010 | $150,000 |
| 22 | GUILLERMO A. SANCHEZ-BADIA, ISABEL C. SANCHEZ, and GUSTAVO J. GIRAL | Wire transfer from ACE's bank account (Account No. 6344) in Miami, FL, to GF's bank account (Account No. 0550) in Miami, FL | 11/10/2010 | $160,000 |
| 23 | ISABEL C. SANCHEZ | Timber Depot check cashed at Check Cashing Store 2 | 11/15/2010 | $29,585 |
| 24 | ISABEL C. SANCHEZ | Timber Depot check cashed at Check Cashing Store 2 | 11/24/2010 | $35,364 |

It is further alleged that the specified unlawful activity is wire fraud, in violation of Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## FORFEITURE
## (18 U.S.C. §§ 981, 982)

1. The allegations in this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of

14

certain property in which the defendants, **GUILLERMO A. SANCHEZ-BADIA**, **ISABEL C. SANCHEZ**, and **GUSTAVO J. GIRAL**, have an interest.

2. Upon conviction of any violation of Title 18, United States Code, Section 1343, or any conspiracy to commit such violation, as alleged in this Indictment, the defendants shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3. Upon conviction of any violation of Title 18, United States Code Section, 1956 or 1957, as alleged in this Indictment, the defendants shall forfeit to the United States, any property, real or personal, involved in such offense, or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

4. The property subject to forfeiture includes, but is not limited to approximately $41,924,418 which represents a sum of money derived from the commission of the alleged wire fraud and money laundering offenses.

5. If the property described above as being subject to forfeiture, as a result of any act or omission of the defendants,

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants, up to the value of the above forfeitable property, and in addition, to require the defendants to return any such property to the jurisdiction of the court for seizure and forfeiture.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461(c), Title 18, United States Code, Sections 982(a)(1), and the procedures set forth in Title 21, United States Code, Section 853.

A TRUE BILL.

_____
FOREPERSON

_____
WIFREDO A. FERRER
UNITED STATES ATTORNEY

ANDREW WEISSMANN
CHIEF, FRAUD SECTION, CRIMINAL DIVISION

By: _____
WILLIAM H. BOWNE
TRIAL ATTORNEY
FRAUD SECTION, CRIMINAL DIVISION

_____
PATRICK M. DONLEY
SENIOR LITIGATION COUNSEL
FRAUD SECTION, CRIMINAL DIVISION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

GUILLERMO A. SANCHEZ-BADIA, et al.

**Defendants.**
_____/

CASE NO. _____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division:** (Select One)

__X__ Miami      ____ Key West
____ FTL         ____ WPB      ____ FTP

New Defendant(s)           Yes ____  No ____
Number of New Defendants   ____
Total number of counts     ____

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No)   Yes
   List language and/or dialect   Spanish

4. This case will take __20__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                    (Check only one)
   I    0 to 5 days      ____          Petty    ____
   II   6 to 10 days     ____          Minor    ____
   III  11 to 20 days    __X__         Misdem.  ____
   IV   21 to 60 days    ____          Felony   __X__
   V    61 days and over ____

6. Has this case been previously filed in this District Court?   (Yes or No)   No
   If yes:
   Judge: _____  Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)   No
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____ District of _____

   Is this a potential death penalty case? (Yes or No)   No

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?   ____ Yes   _X_ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?   ____ Yes   _X_ No

_____
WILLIAM H. BOWNE
DOJ TRIAL ATTORNEY
Court No. A5501472

*Penalty Sheet(s) attached

REV 4/8/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** GUILLERMO A. SANCHEZ-BADIA

**Case No:** _____

Count #: 1

18 U.S.C. § 1349

Conspiracy to Commit Wire Fraud

**\*Max Penalty:** 20 years' imprisonment

Counts #: 2 – 8

18 U.S.C. § 1343

Wire Fraud

**\*Max Penalty:** 20 years' imprisonment as to each count

Count #: 9

18 U.S.C. §1956(h)

Conspiracy To Commit Money Laundering

\*Max Penalty: 20 years' Imprisonment

Counts #: 11 - 22

18 U.S.C. § 1956(a)(1)(B)(i)

Money Laundering

\*Max Penalty: 20 years' imprisonment as to each count

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** ISABEL C. SANCHEZ

**Case No:** _____

Count #: 1

18 U.S.C. § 1349

Conspiracy to Commit Wire Fraud

**\*Max Penalty:** 20 years' imprisonment

Counts #: 2 – 8

18 U.S.C. § 1343

Wire Fraud

**\*Max Penalty:** 20 years' imprisonment as to each count

Count #: 9

18 U.S.C. §1956(h)

Conspiracy To Commit Money Laundering

**\*Max Penalty:** 20 years' Imprisonment

Counts #: 15 - 24

18 U.S.C. § 1956(a)(1)(B)(i)

Laundering of Monetary Instruments

**\*Max Penalty:** 20 years' imprisonment as to each count

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** GUSTAVO J. GIRAL

**Case No:** _____

Count #: 1

18 U.S.C. § 1349

Conspiracy to Commit Wire Fraud

**\*Max Penalty:** 20 years' imprisonment

Counts #: 2 – 8

18 U.S.C. § 1343

Wire Fraud

**\*Max Penalty:** 20 years' imprisonment as to each count

Count #: 9

18 U.S.C. §1956(h)

Conspiracy To Commit Money Laundering

**\*Max Penalty:** 20 years' Imprisonment

Counts #: 10, 16 - 22

18 U.S.C. § 1956(a)(1)(B)(i)

Laundering of Monetary Instruments

**\*Max Penalty:** 20 years' imprisonment as to each count

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.