SILVIA M. KAMINSKY, LMFT, CAP
7700 N. Kendall Drive Suite 508-B
Miami, Florida 33156
Telephone (305) 598-3335
Fax (305) 598-3352
E-mail: silvia@silviakaminsky.com

May 5, 2016

To: Judge Joan Lennard:

Re:   Patient, Isabel Sanchez
      DOB: 01/10/1979

I began treating Mrs. Isabel Sanchez on October 20, 2012, after she was discharged from Mercy Hospital inpatient psychiatric unit. She was hospitalized after suffering from a brief episode of uncontrolled psychosis. She has not suffered a re-occurrence of psychosis, but during the course of her psychotherapy, she was referred to a psychiatrist who diagnosed her with Bipolar Disorder and has been providing her treatment for that disorder with psychotropic medications. Mrs. Sanchez has achieved a high level of stability and functionality as a result of dedicating herself to her recovery from mental illness and commitment to compliance with her treatment providers.

I wanted to convey and emphasize two very important clinical factors regarding Mrs. Sanchez' case for consideration of any consequence for her in regard to the nature of the legal matter before your court. Mrs. Sanchez did not initiate treatment with this provider due to any mandated or pre-emptive decision to address her legal circumstances. In fact, this provider is also a certified addictions professional and has nearly 30 years of experience working with clients who come to treatment due to legal involvement, so I am quite familiar with the difference in patients. This is important because Mrs. Sanchez came to therapy taking full responsibility for many dysfunctional issues and relationships in her life that basically "imploded" on her resulting in her temporary break from reality. Her treatment goal was to identify the multitude of stressors, and and understand their complexity, that led to her break as she was petrified of a re-occurrence; and to recover herself, her judgement, her morality, spirituality and healthy functioning in relationships, primarily with her then infant daughter and husband. It was during this initial phase of treatment that Mrs. Sanchez confronted, on her own, as the therapist was unware until she unearthed it, the incongruous nature of the fraudulent business practice thatshe had participated in. The remorse she experienced and shared did not have to be "therapeutically manufactured." Without facing imminent legal ramifications at the time, she committed herself to a process of repairing herself on every level career (separating herself from her family's business), her marital relationship with her

husband, her religious affiliation (and volunteer work), and most important, being healthy enough to be emotionally and physically present for her infant daughter. Although Mrs. Sanchez was able to recover her functionality within a year of her starting treatment, she knew that she would have to be emotionally ready for her legal issues. In fact, her motivation to get well and achieve optimum functioning was both for the present and the future should the worst case scenario of being separated from her daughter happened.

The second clinical factor has to do with what I referred to above as to the incongruous nature of her fraudulent acts (incongruous to her ability to have good judgement and values to not cause harm to others). As a family therapist, I evaluate patients within the context of their family system, both past and present. It was clear in evaluating Mrs. Sanchez and helping her identify her stressors, that she was a "parentified child" (she also happens to be the eldest daughter). From a young age, she was given the roles and responsibilities of an adult in the family. Her identify as a good person and family member was to trust her caretakers and help them unconditionally, even at her own expense. Unable to set emotional boundaries and limits with her father, well she didn't even know she had this right until therapy, she continued to behave in a way to sustain what she perceived to be critical to the family's survival. Mrs. Sanchez subconsciously took on the pressure at her own expense, developing and suffering symptoms of anxiety and eating disorders, rather than "blow up the family," and eventually her psyche gave out (and coping skills) with the onset of the psychotic break. Human beings are not as much influenced by someone in power over us that we dislike, as much as we are by someone we love and respect. And Mrs. Sanchez does love her father. She has matured tremendously to be able to see him as a very flawed individual with his own mental and physical health issues, and that setting limits with him is not a betrayal of her love and concern, but the healthy choice for the both of them.

I am confident that Mrs. Sanchez is a fully functioning individual at this time and not capable of the behavior in which she finds herself facing the repercussions for. I believe she is strong and stable, but also know that she will need ongoing mental health treatment as Bipolar disorder is a serious psychiatric condition. I trust that in the considering of all the social, legal and financial factors involved in her sentencing decision, her history and present circumstances will be weighed with fairness.

Respectfully submitted,

*Silvia Kaminsky*

Silvia Kaminsky, LMFT, CAP